ANNA SEXTON KAVANAUGH, Respondent, v. SUPREME COUNCIL OF THE ROYAL LEAGUE, Appellant.

St. Louis Court of Appeals, June 6, 1911.

1. **PLEADING: Motion for Judgment: Nature.** A motion by plaintiff for judgment on the answer operates as a demurrer and admits the truth of all facts well pleaded.

2. **FRATERNAL BENEFICIARY ASSOCIATIONS: By-Laws: Suicide Clause: Illinois Rule: Missouri Rule.** In Illinois, under the decisions of its courts, an agreement by a member of a mutual benefit society to comply with future by-laws authorizes a future by-law reducing or destroying benefits in case of death from suicide; but the rule is otherwise in Missouri, agreements of this character being interpreted to intend no more than that the member shall comply with and be governed by such by-laws as are passed in aid of the insurance or touching the conduct of the social features of the society.

3. **CONTRACTS: Laws Governing.** When a contract is both made and to be performed in the same state or country, the law thereof enters into it as a factor and controls its execution, validity, interpretation and legal effect, in the absence of provision to the contrary; and the law of the place of performance of a contract controls in interpreting it and determining its legal effect, regardless of where it is made, but when nothing to the contrary appears, the law conclusively presumes that a contract is to be performed in the jurisdiction where it is made.

4. ———: ———. Where a contract provides that the law of some other country than the one where it is to be performed shall control in the matter of its performance, such law will prevail, unless the provision is a mere sham to avoid usury or something of that character; and where the parties contemplate, at the time the contract is made, that it is to be partly performed in one state and partly in another, the law of each place of partial performance governs such part of the performance as is to be had there.

5. **FRATERNAL BENEFICIARY ASSOCIATIONS: Suicide Clause: Laws Governing Interpretation: Facts Stated.** A member of a fraternal beneficiary association, organized under the laws of Illinois but authorized to transact business in this state, in his application for a life insurance policy agreed that his policy should be subject to all by-laws of the association then in force or which might thereafter be passed. Subsequent to the issuance of the policy, but before insured's death, a by-law

was passed reducing the amount to be paid under the policy in case death resulted from suicide. The contract of insurance was made in Illinois, where insured resided at all times during the life of the policy, and the contract was to be and actually was performed there until the cause of action accrued. Insured committed suicide, and his widow, who was the beneficiary, brought suit in this state, although she was a resident of Illinois. *Held*, that the validity and legal effect of the by-laws are to be determined in accordance with the laws of Illinois.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*R. P. & C. B. Williams* for appellant.

(1) The contract in this case being an Illinois contract, the Illinois law, as to the rights of the parties, must control. Dolan v. Royal Neighbors, 123 Mo. App. 147; Roberts v. Modern Woodmen, 133 Mo. App. 207. (2) Under the law of the State of Illinois, so determined by the appellate courts of that state, the after enacted by-law is valid and binding on the member and beneficiary, and limits the amount of liability of the society. Scrow v. Supreme Council, 188 Ill. 9; Fullinwided v. Royal League, 180 Ill. 621; Supreme Lodge v. Kutscher, 179 Ill. 340; Baldwin v. Begley, 186 Ill. 180; Supreme Lodge v. Tribbe, 179 Ill. 348; Knights of Maccabees v. Hommus, 81 Ill. App. 560. (3) The by-law limiting time within which suit can be brought is valid and binding under the laws of the State of Illinois. Peoria Ins. Co. v. Whitehill, 25 Ill. 466; Merchants' Life v. Treat, 98 Ill. 59.

*F. H. Bacon* for respondent.

(1) No court under the doctrine of comity is bound to enforce the statute of a foreign state if the contract violates the public policy of the state of the forum. Campbell v. Club, 100 Mo. App. 249; 9 Cyc. 676; Railroad v. Harrison, 119 Ala. 539. (2) The point made by the appellant is that under the law of

the State of Illinois the after-enacted by-law is valid and binding on the member. This is not by virtue of any statute of Illinois, but is the opinion of the courts as to the proper construction to be given to the contract. The courts of this state have construed the contract differently. Campbell v. Club, 100 Mo. App. 249; Hysinger v. Supreme Lodge, 42 Mo. App. 635; Lodge v. Sater, 46 Mo. App. 452; Smith v. Supreme Lodge, 83 Mo. App. 512; Knights Templar and Masons Life Indemnity Co. v. Jarman, 104 Fed. Rep. 638; Morton v. Supreme Council, 100 Mo. App. 76; Zimmerman v. Supreme Tent, 122 Mo. App. 591; Lewis v. Knights of Pythias, 122 Mo. App. 547; Wilcox v. Court of Honor, 134 Mo. App. 547; Smail v. Court of Honor, 136 Mo. App. 434.

NORTONI, J.—This is a suit on a certificate of life insurance. On motion, the court gave judgment for plaintiff notwithstanding defendant's answer, as though none of the matters pleaded therein constituted a defense to the action, and from this judgment defendant prosecutes the appeal.

Defendant is a mutual benefit society organized and existing under the laws of the State of Illinois and as such is engaged in the business of life insurance therein, as well as in Missouri, under the laws of which latter state it has duly qualified. Plaintiff, the widow of Thomas W. Kavanaugh, is the beneficiary in a certificate of life insurance issued by defendant to her husband September 24, 1895, whereby defendant insured the life of Thomas W. Kavanaugh in her favor in the amount of four thousand dollars. Plaintiff's husband having departed this life August 29, 1905, this suit was instituted on the certificate of insurance, to the end of collecting the same. The petition is in the usual form with the certificate itself annexed thereto as an exhibit. As the court sustained a motion for judgment on defendant's answer and gave judgment

for plaintiff notwithstanding its averments, it will be essential to set out so much of the answer as is relevant to the question in judgment. By its answer defendant pleads that it is a mutual benefit society organized and existing under the laws of the State of Illinois with its home office in that state and that it is duly qualified as such under the laws of Missouri as well and has been at all times since the approval of the act of our Legislature touching benefit societies on March 16, 1897. The answer admits that plaintiff's deceased husband became a member of the order by association with its council known as Lake Shore Council No. 59 in the State of Illinois during the month of September, 1895 and that on the 24th day of that month it issued to him the certificate of life insurance declared upon in the petition, by which it undertook to pay plaintiff, wife of the insured, the sum of four thousand dollars in event of the prior death of the insured under the conditions only prescribed in the certificate, the insured's application therefor, the constitution and by-laws of the order then in force or to be thereafter adopted. But it is averred that the insured stipulated in his application for the insurance that "if accepted as a member, I agree to comply with, and that my membership and all interests of the persons entitled to such benefits shall be subject to all laws, rules and regulations, now in force in the order or which may hereafter be adopted by it;" that this application and all the provisions thereof are made a part of the certificate of insurance which was issued thereon; and that, in the certificate sued upon which the insured duly signed and accepted, it was agreed between the parties that the insured member, Thomas W. Kananaugh, would comply in the future with all the laws, rules and regulations now governing said council and fund or that may hereafter be enacted by the Supreme Council to govern said council and fund, all of which are made a part of the contract. Besides

averring that the contract of insurance was made in Illinois, the answer avers, too, that both parties resided in that state at the time and that the contract was to performed therein. Indeed, it is averred that the insured and plaintiff continued to reside in the State of Illinois until the time of the death of the insured, which occurred in New York, and that the contract was fully performed in Illinois where plaintiff still resides. It is averred, too, that by the contract of insurance defendant specially reserved to itself the right to amend or repeal any of its by-laws then in force and to substitute new by-laws therefor and thus change the contract of insurance between the parties. At the time the contract of insurance was entered into, one of defendant's by-laws provided if any member shall, within five years subsequent to his admission into the order, die by the act of his own hand, sane or insane, his beneficiary shall receive only one-half of the face value of the certificate. The answer avers that, in accordance with the power reserved to repeal or change the existing by-laws or make new ones, defendant from time to time amended the by-law on suicide above mentioned, prior to the death of the insured, until on April 11th and 12th, 1905, when by competent authority of the order, it enacted the following by-law thereon which took effect July 1, 1905 and was in force at the time plaintiff's husband came to his death:

"No member, whether admitted heretofore or hereafter, shall die by his own act or hand, sane or insane; and if any member whether admitted heretofore or hereafter shall die by his own act or hand, sane or insane, such death shall forfeit all rights and claims to the amount agreed to be paid on his death and specified in the benefit certificate of such member and his beneficiary or beneficiaries shall receive and be paid in lieu thereof a sum equal to the total amount actually paid by such members to the widows' and orphans' benefit fund of the order."

It thus appears that the time limit prescribed against suicide, which operated to defeat the right to a portion of the insurance under the contract as originally entered into, was entirely removed, and, under the by-law in force at the time of the death of the insured, the beneficiary is entitled only to the amount paid by the member to the widows' and orphans' fund, which in this case is conceded to be $322.84. Defendant avers that the insured, Thomas W. Kavanaugh, departed this life in the city of New York in the State of New York on the 29th day of August, 1905. after the by-law above copied took effect, by his own hand through an act of suicide by shooting himself with a pistol, and because of this fact plaintiff is entitled to recover only the sum of $322.84 under the contract as modified by the duly enacted by-law on suicide above set forth.

As before stated, it is averred in the answer that defendant is an Illinois corporation organized and existing under the laws of that state, though duly qualified to do business in Missouri as well, and that it keeps and maintains its chief office in the city of Chicago, Illinois, where the contract of insurance was entered into in September, 1895; that Thomas W. Kavanaugh, the insured, was a citizen and resident of the State of Illinois at the time of contracting the insurance and at such time became a member of defendant's Lake Shore Council, No. 59 in that state, to which he paid all of the dues and assessments in performing the contract on his part; that the contract of insurance between the parties was to be performed in the State of Illinois, and that the insured, Kavanaugh, continued to reside therein to the time of his death, where he paid all of his dues and assessments, and that his wife, plaintiff, resided in said state during all the time, resided there at the time of the death of the insured and continues to reside there even now, but prosecutes this suit on the certificate in Missouri

for the reason the rule of decision is more favorable here as to the interpretation and construction of such contracts, than in Illinois. Besides pleading the contract was both entered into and to be performed in the State of Illinois, the answer pleads as well the rule of decision which obtains in that state with respect to such contracts of insurance. Touching this matter, it explicitly sets forth that contracts of insurance, made between defendant and other mutual benefit societies and their members stipulating, as in this case, that the member will comply with the laws, rules and regulations then governing the council or fund or that may thereafter be enacted by the order to govern such council and fund, are interpreted and construed under the law of that state to authorize and render effectual subsequently enacted by-laws on the question of suicide, such as here involved. A number of adjudications of the Supreme Court of Illinois in several cases set forth in the answer declaring such a rule of decision are aptly referred to therein. So, it appears the question presented relates to the interpretation, construction and legal effect of a contract made between these parties in the State of Illinois to be wholly performed therein and in which state full performance, except the payment of the benefit, was in fact had.

The motion for judgment on the answer, interposed by plaintiff and which was sustained by the court, operates in the nature of a demurrer and admits the truth of all facts well pleaded in the answer, and the matter must be determined here as though such facts are conceded to be true. By sustaining the motion and giving judgment for plaintiff for the full amount of four thousand dollars stipulated in the face of the certificate and interest thereon, notwithstanding the subsequently enacted by-law on suicide which was in force and effect more than a month before the death of the insured, the court essentially applied the rule of decision which obtains in this state to such matters

and rejected the *lex loci contractus,* or the rule which
obtains in Illinois. In so pronouncing judgment of the
law, on the conceded facts, the court obviously erred,
but it did so in obedience to a former decision of this
court in Campbell v. Am. Ben. Club, etc., 100 Mo. App.
249, 73 S. W. 342, wherein it was declared that a mu-
tual benefit insurance contract, both entered into and
fully performed in the State of Mississippi, should be
construed to the end of declaring its legal effect in ac-
cordance with the common law rule which obtains
here, notwithstanding another and different rule un-
der the same system of jurisprudence was proved in
the case to prevail in Mississippi. It seems, too, the
rule in the case referred to was declared the law even
though it appeared therein the plaintiff resided in
Mississippi at the time the cause of action accrued and
at the time the suit was being prosecuted in this
jurisdiction, but no authority whatever is cited in sup-
port of the judgment there given, and the matter seems
to have been considered without much thought on ele-
mentary principle. It is true in that case the court
cites Morton v. Sup. Council, etc., 100 Mo. App. 76,
73 S. W. 259, on the first proposition disposed of in the
opinion, and it may be that the Morton case was ac-
cepted as an authority on the second point; but when
that case is examined with care it reveals the court
had no such thought in mind, for it appears in the
opinion written by Judge Goode in Morton v. Sup.
Council, 100 Mo. App. 76, 89, 73 S. W. 259, that though
the court considered and interpreted an insurance con-
tract under our law made between Morton and the
Supreme Council and fully performed in the State of
Illinois, the law of that state was neither pleaded nor
proved in the case. The opinion in the Morton case
comments upon this fact and says that because of "the
senseless rule of practice," which still prevails, the
court was precluded from considering a defense which

rests upon a foreign law, even of a sister state, unless such law was pleaded and proved. Because the law of Illinois was neither pleaded nor proven in the Morton case, the court very properly treated the decisions of the Supreme Court of that state as not controlling, and, acting upon the familiar presumption that the common law prevailed in both jurisdictions, the contract was construed in accordance with the principles of that system of jurisprudence, as declared in prior decisions of the jurisdiction where the contract was in judgment—that is, in accord with the rule of the forum. [See 3 Page on Contracts, sec. 1720; Terry v. Robbins, 128 N. C. 140, 83 Am. St. Rep. 663, 38 S. E. 470.]

Aside from any statute on the subject, under the common law, as interpreted and declared by the Supreme Court of the State of Illinois, it is competent for a mutual benefit society, under such a general stipulation as is found in the application for and the certificate of insurance in this case, to change the amount of indemnity originally granted, or abrogate it entirely for that matter, by the provisions of a subsequent by-law enacted against the suicide of the member. In that state, where the member agrees in his application and by accepting the certificate thereunder, as here, to comply with future laws and regulations of the order and that the indemnity fund provided for shall be governed thereby, the courts universally not only sustain the contract as a valid one but construe and declare its legal effect to be such as abundantly authorizes the enactment of a future by-law against the suicide of the member, prescribing a reduction or an entire destruction of the benefit in the event death ensues from that cause. Decisions of the Supreme and Appellate Courts of Illinois, pleaded in defendant's answer, which so construe and declare the legal effect of such contracts are as follows: Scow v. Sup. Council, etc., 223 Ill. 32; Fullenwider v. Sup.

Council, etc., 180 Ill. 621; Sup. Lodge K. of P. v. Kut-
scher, 179 Ill. 340; Sup. Lodge K. of P. v. Trebbe, 179
IIll. 348; Moerschbaecher v. Sup. Council, etc., 188 Ill.
9; see also Sup. Tent Maccabees v. Hammers, 81 Ill.
App. 560. Though such be the rule in that state, the
courts of Missouri decline to give effect to these gen-
eral provisions in the contract as sufficient to author-
ize the society to either reduce, impair or destroy the
indemnity vouchsafed in the insurance certificate. In-
deed, the doctrine with us is that it is an unreasonable
interpretation or construction of such general lan-
guage contained in the application and certificate to
declare it sufficient to signify an intention on the part
of insured that the indemnity might be either impaired
or swept away by a future by-law on the subject of
suicide. Instead of declaring such a sweeping legal
effect of such contracts by construction, the courts of
this jurisdiction interpret agreements of this character
to "comply," "abide by" and "be governed by" fu-
ture laws of the order, etc., to intend no more than
that the member shall comply with, abide by and be
governed by such laws as are passed in aid of the in-
surance and touching the conduct of the social feature
of the society. See the following authorities in point:
Lewine v. Sup. Lodge K. of P., 122 Mo. App. 547, 99
S. W. 821; Zimmermann v. Sup. Tent, etc., 122 Mo.
App. 591, 99 S. W. 817; Morton v. Sup. Council, etc.,
100 Mo. App. 76, 73 S. W. 259; Smith v. Sup. Lodge
K. of P., 83 Mo. App. 512; Wilcox v. Court of Honor,
134 Mo. App. 547, 114 S. W. 1155; Smail v. Court of
Honor, 136 Mo. App. 434, 117 S. W. 116. From this
relative statement of the different rules of decision
which obtain in the courts of this state and those of
Illinois, it is obvious that if the law of Illinois is to
prevail, plaintiff is not entitled to recover more than
$322.84, as prescribed in the subsequently enacted by-
law on suicide, while if the law of this jurisdiction ob-
tains in the case, she is entitled to the face of the certi-

ficate, four thousand dollars, with interest, notwith·
standing the subsequent suicide by-law, which, with us,
is declared to be ineffectual to impair the insurance
under a reasonable construction of the contract.
Therefore, the question for decision relates to the in-
terpretation or construction of the contract between
defendant and insured and the legal effect to be de-
clared thereon, and the inquiry is: By the law of
which state shall the matter be ascertained and de-
termined? If the averments of the answer be true,
and we must accept them as importing verity with the
case in its present posture, the contract to be con-
strued was not only made in Illinois but was to be
fully performed there as well. Indeed, so far as plain-
tiff and the deceased are concerned, the contract has,
as a matter of fact, been fully performed in that state,
for it is averred that, besides its being made there,
all of the dues and assessments were paid by the in-
sured in Illinois and that he was a citizen of that state
at the time of his death through suicide in New York,
and it is averred, too, that plaintiff resided there dur-
ing all of the time, at the time of the death of her
husband and continues to do so until this date. It
therefore appears that the contract had been fully per-
formed in Illinois, except as to the payment of the
benefit, and it is with respect to the amount of this
that the controversy arose between the parties. In
some cases, it is said the law of the place where the
contract was made controls as to the matters of execu-
tion, validity, interpretation, construction and legal ef-
fect. [See Cox v. United States, 6 (Pet.) U. S. 172.]
In others, it is said the law controlling the contract
is that of the place where it is to be performed. [See
Andrews v. Pond, 13 (Pet.) U. S. 65; Bank v. Daniel,
12 (Pet.) 32.] It is difficult to formulate a general
rule touching all the varied circumstances which may
be provided for in the contract or contemplated by
the parties at the time of its execution. As is pointed

out by Mr. Page in his work on Contracts, in section
1721, it seems the form of expression with respect to
this question varies with the facts and circumstances
in judgment before the court.   A more recent case
in the Supreme Court of the United States declares
that matters bearing upon the execution, interpreta-
tion and validity of a contract are determined by the
law of the place where it is made, while matters con-
nected with its performance are regulated by the law
prevailing at the place of performance, and it is said,
too, that matters respecting the remedy depend upon
the law of the place where the suit is brought, but with
this latter suggestion as to the remedy we are uncon-
cerned here.   [See Scudder v. Union Nat'l Bank, 91
U. S. 406.]   Another case states the rule to be that the
law of the place where a contract is made governs
its nature, obligation and interpretation unless it ap-
pears that the parties when entering into the contract
intended to be bound by the law of some other country.
[See Liverpool, etc., Co. v. Ins. Co., 129 U. S. 397; see
also Aymar v. Sheldon, 27 Am. Dec. 137 and valuable
note; 3 Page on Contracts, sec. 1721.]   But though the
rule is thus stated in varying formula, as the circum-
stances of the particular case in judgment suggest,
all of the authorities agree that when a contract is
both made and to be performed in one and the same
state or country, the law of that country enters into
it as a silent factor and controls the matter of its
execution, validity, interpretation, construction and
legal effect.   [See Stix v. Mathews, 63 Mo. 371; Hart-
mann v. L. & N. R. Co., 39 Mo. App. 88, 94; Roach v.
St. Louis Type Foundry, 21 Mo. 118; Mullen v. Reed,
64 Conn. 240; Liverpool, etc., Co. v. Ins. Co., 129 U.
S. 397; Scudder v. Union Nat'l Bank, 91 U. S. 406;
Aymar v. Sheldon, 27 Am. Dec. 137; Parsons on Con-
tracts, 586; Page on Contracts, secs. 1721, 1717, 1733.]
The Supreme Court of Connecticut, in Mullen v. Reed,
64 Conn. 240, declared that a contract of life insur-

ance between the insured and insurer, both of whom were residents of the State of Massachusetts, made and to be performed in that state, should be construed according to the law of that state, which essentially entered into the contemplation of the parties at the time. We ruled precisely the same in Dolan v. Royal Neighbors, etc., 123 Mo. App. 147, 100 S. W. 498, for there it appears the contract of life insurance was both made and fully performed in Illinois. That the law of the place of performance controls as to construction and declaring the legal effect of a contract is not to be doubted, unless it is stipulated that some other law shall control instead, and this is true wherever the contract may be made. [3 Page on Contracts, secs. 1733, 1721.] Such is the rule of our Supreme Court at any rate. [See Smoot v. Judd, 161 Mo. 673, 61 S. W. 854. See also Bedford v. Loan Ass'n, 181 U. S. 227; London Assurance v. Companhia de Moagens, 167 U. S. 149.] It is therefore entirely clear that as it appears the contract of insurance was made in Illinois, to be performed there, and was afterward actually performed in that state until the cause of action accrued thereon, its construction and legal effect are to be declared in accordance with the law of that jurisdiction and not by that which obtains here. The rule announced by this court in Campbell v. Am. Ben. Club, 100 Mo. App. 249, 73 S. W. 342, to the effect that such contracts made in a foreign state and fully performed there are to be construed in accordance with the law of this state merely because the society is qualified to do business in Missouri should be disapproved, for it appears to be at variance not only with principle but with all of the authority as well.

But it is suggested that as it appears from the answer defendant is qualified to do business in this state and that it issues insurance certificates to its members throughout the country the contract should be considered as though the parties contemplated per-

formance in every state where its business is conducted. Of this it should be suffcient to say that we are dealing with the averments of the answer alone, which, for the purpose of the case, import verity,to the effect that the particular contract involved here was made and to be performed in Illinois and further that it was actually performed there. However, through admissions, the certificate sued upon is incorporated in the answer as well and we will examine it in aid of plaintiff's cause. The certificate itself reveals that it was issued in Illinois September, 1895, by defendant at its office in Chicago and that it was accepted in that state by the insured, who is described therein as a member of defendant's Lake Shore Council No. 59, in Illinois. Nothing in the certificate suggests that any portion of the performance of the contract should be had in this or any other jurisdiction than that of Illinois, and this being true, the law conclusively presumes, when nothing to the contrary appears, that the contract is to be performed in the jurisdiction where it is entered into. [3 Page on Contracts, sec. 1717.] Whatever might be said of a case where the certificate of insurance was issued and accepted in Illinois and the insured subsequently removed to this state, became a citizen, paid his future dues and assessments through a local council here, completed the performance on his part and afterwards died, giving rise to a cause of action on the certificate in this jurisdiction, it is entirely clear that there is nothing in this record suggesting Missouri as the place of performance of any part of this contract while, indeed, both the direct averment of the answer and the presumption of law go to the contrary.

It is no doubt true that if the parties provide in a contract the law of some other country shall control the matter of its performance, such law will prevail, unless it be a mere sham to avoid usury or something of that character, and it is likewise true if it be con-

templated by the parties at the time of making the
contract that it is to be partly performed in one state
and partly in another the law of each place of partial
performance governs such part of the performance
as is to be had in that state. [3 Page on Contracts,
sec. 1717; Liverpool, etc., Co., v. Ins. Co., 129 U S.
397.] Under this rule, it may be a benefit certificate
in some cases would be declared to evince a contract
contemplating performance in different jurisdictions.
Insurance contracts of this character seem to be in a
measure transitory in the matter of performance, for
it is well known the insured may remove from one
state to another and perform the duties enjoined on
him through dealing with an agency of the order, by
becoming connected and associated with a local coun-
cil or lodge identically as if be remained where the con-
tract was made. Then, too, such societies become licen-
sed in and as citizens of the various states and are
therefore required to perform under the laws of the
state where licensed in proper cases. Because of these
considerations, it may be, if one residing in Illinois
would become associated with the order there, enter
into an insurance contract and subsequently remove
to this state, where the performance was completed,
with the consent of the order, by paying the assess-
ments through such association with the local council
or lodge, die here and give rise to a cause of action on
the certificate in Missouri, that this state would be
regarded as the place of partial performance sufficient
to invoke its jurisdiction in determining the interpreta-
tion and legal effect of the contract. On this question,
we express no opinion whatever as it has not been
weighed, but expressly reserve it for consideration
when such a state of facts may arise. It is obvious no
such question is presented by the present record, for
the reason no part of this contract was ever per-
formed in Missouri, nor did the insured reside here at
any time after it was entered into and prior to his

death when the cause of action accrued, nor did the plaintiff reside here then nor has she resided here at any time since.

The judgment should be reversed and the cause remanded for further .proceedings. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.