### ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. MEINSEN et al.

No. 12260.

Circuit Court of Appeals, Eighth Circuit.

Oct. 28, 1942.

Rehearing Denied Nov. 14, 1942.

Carson E. Cowherd, of Kansas City, Mo. (John B. Gage, of Kansas City, Mo., E. W. Dillon, of Columbus, Ohio, and Gage, Hillix, Hodges & Cowherd, of Kansas City, Mo., on the brief), for appellant.

Roscoe C. Van Valkenburgh, of Kansas City, Mo. (Arthur Miller, Alton Gumbiner, David L. Sheffrey, and Miller, Gumbiner Sheffrey & Van Valkenburgh, all of Kansas City, Mo., on the brief), for appellees.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment in favor of appellees as beneficiaries named in an accident benefit certificate issued by appellant to Christian W. Meinsen of Higginsville, Missouri.

Reversal is sought upon two grounds, namely, (1) that the death of the insured resulted from murder and was not covered by the contract; and (2) that the action was barred by an express limitation in the contract.

The material facts are not in dispute. The appellant is a fraternal beneficiary association incorporated under the laws of Ohio, with its principal office at the city of Columbus. At all times material to this case appellant was authorized to transact business in the state of Missouri, subject to the provisions of the fraternal beneficiary laws of that state.

The certificate was issued by appellant February 11, 1931. The insured was killed at Independence, Missouri, June 3, 1939, by Daniel B. Squires while Squires was attempting to rob the insured's companion. Appellees' claim for benefits under the certificate was disallowed by appellant on July 17, 1939, and the appellees were so notified by letter dated July 19, 1939. This suit was instituted by appellees in the state court of Missouri on April 5, 1941, and removed to the federal court by appellant on the ground of diversity of citizenship.

The certificate issued to the insured made the constitution, by-laws, articles of incorporation of appellant, and the application for insurance all a part of the contract. The certificate provided benefits "for death due to accidental means alone, and independent of all other causes. * * *" The by-laws provided: "This Order shall not be liable to any person for any benefit for any death * * * resulting from * * * murder. * * *"

Under the first defense the issue was whether the death of the insured was accidental or the result of murder. The case was tried to the court without a jury, and the court upon this issue found that Meinsen, the insured, met his death at Independence, Missouri, "solely and independently of all other causes, from the unintentional, accidental discharge of a revolver in the hand of another. * * *"

Whether this finding is clearly erroneous or not depends upon the construction of the word "murder" as used in the contract, which in turn depends upon whether the contract is an Ohio contract to be construed under the laws of Ohio or a Missouri contract to be construed under the laws of Missouri.

In Missouri, as at common law, an unintentional homicide is murder if committed in the perpetration of a felony. The statute (§ 4376, R.S.Mo.1939, Mo. R.S.A. § 4376) reads, "Every homicide * * * committed in the perpetration or attempt to perpetrate any * * * robbery [or other felony] shall be deemed murder." State v. Glover, 330 Mo. 709, 50 S.W.2d 1049, 1050, 1052, 87 A.L.R. 400; State v. Meadows, 330 Mo. 1020, 51 S.W. 2d 1033, 1037.

In Ohio § 12400 of the General Code provides that "Whoever, purposely, * * * or in perpetrating or attempting to perpetrate * * * robbery * * * kills another is guilty of murder * * *." In construing this statute in Turk v. State, 48 Ohio App. 489, 194 N.E. 425, 426, the court said: "The statute is clear and explicit, and the provision is 'Whoever, purposely * * * kills.' In other words, there must be a purpose and intent to kill before the crime of murder is complete." The court further declared that the common law rule "is not the law of the state of Ohio."

Since the killing of Meinsen was unintentional, but committed in the perpetration of a robbery, his death was the result of accident merely or of murder according to whether the contract is governed by Missouri or Ohio law. The general rule is that the law of the place of contracting determines what are the obligations of any contract. American Law Institute, Restatement of Conflict of Laws, § 346. Both the Missouri and the Ohio courts hold that a contract of insurance is made in the state where the last act is done which is necessary to complete the contract and bind the insured and the insurer. Yeats v. Dodson, 345 Mo. 196, 127 S.W.2d 652, 656, 138 S.W.2d 1020; Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S.W. 519, 53 L.R.A. 305, 71 Am.St.Rep. 628; Equitable Life Ins. Co. of Iowa v. Gerwick, 50 Ohio App. 277, 197 N.E. 923, 926. In this instance the by-laws of the Order provide that the insurance

"shall not accrue until twelve o'clock noon, standard time, of the day upon which the certificates are dated." The certificate was signed and dated at Columbus, Ohio, on February 11, 1931. The contract is, therefore, as the district court found, an Ohio contract. It became effective under the by-laws on the date it was signed in Ohio. Signing was the last act necessary to complete it. Eyring v. Kansas City Life Ins. Co., 234 Mo.App. 328, 129 S.W.2d 1086; Pickett v. Equitable Life Assur. Soc. of United States, Mo.App., 27 S.W.2d 452.

The finding of the court that the insurance certificate was an Ohio contract; that the insured was accidentally killed within its meaning; and that his death was not the result of murder, is sustained.

The second contention that the action was barred is based upon section 11 of the by-laws of the Order in effect in 1931, which reads: "No suit or proceeding, either at law or in equity, shall be brought to recover any benefits under this Article after six (6) months from the date the claim for said benefits is disallowed by the Supreme Executive Committee."

The claim was disallowed on July 17, 1939; the appellees were so notified by letter dated July 19, 1939; and the suit was begun on April 5, 1941, nearly 18 months after liability was declined.

In Ohio "the parties to a contract of insurance may, by a provision inserted in the policy, lawfully limit the time within which suit may be brought thereon, provided the period of limitation fixed be not unreasonable." Appel v. Cooper Insurance Co., 76 Ohio St. 52, 80 N.E. 955, 10 L.R.A.,N.S., 674, 10 Ann.Cas. 821; Bartley v. National Business Men's Ass'n, 109 Ohio St. 585, 143 N.E. 386, 387. In the Appel case, supra, involving a fire insurance policy, a provision similar to the one in the present contract barring an action on the policy "unless commenced within six months next after the fire" was held to be binding upon the parties; and in the Bartley case a two-year limitation was sustained. The action in this case was barred by the contract, if the lex loci contractus is controlling.

The applicable statute of limitations in Missouri where the cause of action arose is ten years. By the Act of March 18, 1887, p. 99 (now § 3351, R.S.Mo.1939, Mo.R.S.A. § 3351), the legislature of Missouri declared: "All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void."

The question presented is whether the lex loci contractus or the lex fori controls. It is now settled "that the federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the state in which they sit." Griffin v. McCoach, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481, 134 A.L.R. 1462; Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477; Pink v. A. A. A. Highway Express, Inc., 314 U.S. 201, 62 S. Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In Missouri the law of another state, or a contract made in another state and valid under its laws, will be enforced by the courts unless to do so would be contrary to the public policy of the state. Burg v. Knox, 334 Mo. 329, 67 S.W.2d 96; Maxey v. Railey & Bros. Banking Co., Mo. App., 57 S.W.2d 1091, 1093; Kroger Grocery & Baking Co. v. Reddin, 8 Cir., 128 F.2d 787, 791.

By the public policy of a state is meant "the law of the state, whether found in the constitution, the statutes, or judicial records." People v. Hawkins, 157 N.Y. 1, 12, 51 N.E. 257, 260, 42 L.R.A. 490, 68 Am.St.Rep. 736. In Burg v. Knox, supra, the court referred approvingly to the statement of the Supreme Court of Minnesota in Herrick v. Minneapolis & St. L. Ry. Co., 31 Minn. 11, 14, 16 N.W. 413, 414, 47 Am.Rep. 771, that "to justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens."

The district court having considered the Missouri law, found that § 3351, R.S.Mo. 1939, supra, expresses the public policy of the state of Missouri and refused to apply the six months' limitation stipulated in the contract. The court regarded the decisions of the Supreme Court of Missouri in

Karnes v. American Fire Ins. Co., 144 Mo. 413, 46 S.W. 166; Richardson v. Chicago & A. Ry. Co., 149 Mo. 311, 50 S.W. 782, and Brucker v. Georgia Casualty Co., 326 Mo. 856, 32 S.W.2d 1088, as controlling.

In the Karnes case, supra, the insurance policy provided that "no suit or action of any kind against this company for a recovery of a claim under this policy shall be sustainable in any court, unless begun within one year from the date of the fire." The contract, like the one in the instant case, was made after the act of March 18, 1887 (§ 3351, R.S.Mo.1939, Mo.R.S.A. § 3351), became effective. In determining the applicability of the statute the Supreme Court of Missouri said:

"The legislature determined that a sound public policy demands that the courts of the state shall remain open to litigants as long as their claims are not barred by the statute of limitations, and hence passed this act. * * * The legislature * * * established, as the policy of this state, a uniform regulation of the time within which suits may be brought, and declared that this should not be changed by agreement. * * * We think it was within the power of the legislature to adopt this rule, and that it is the duty of the courts to enforce it.

In the Richardson case, supra, a shipping contract provided that "any suit against said first party [the Railway Company] for the recovery of the loss or damage to the property herein specified shall be commenced within sixty days next after such loss or damages shall have occurred, or be forever barred; * * *." [149 Mo. 311, 50 S.W. 784] Section 3351 of the statute was in effect prior to the making of the shipping contract, and the Supreme Court of Missouri repeated with approval the foregoing excerpt from the opinion in the Karnes case and enforced the statute and not the contract.

In the Brucker case an insurance policy was involved providing that "No action shall be brought against the Company under or by reason of this Policy unless it shall be brought * * * within one year * * *." [326 Mo. 856, 32 S.W.2d 1089] The defense was based upon this provision of the policy. The court held that the provision was invalid because in conflict with the Missouri statute of limitations. The court quoted with approval from the opinion in Coleman v. Magnolia Provision Company, Tex.Civ.App., 287 S.W. 294, 296,

the following: "There is no doubt the general rule is that stipulations in a contract intended to deprive the courts of power to determine the substantive rights of parties thereto are contrary to public policy and therefore unenforceable."

The appellant argues that in all of these cases decided by the Supreme Court of Missouri the conflict of laws is not involved. It does not appear in any of them whether the contracts were Missouri contracts.

The appellant relies upon the following decisions of the appellate courts of Missouri: Dolan v. Royal Neighbors of America, 123 Mo.App. 147, 100 S.W. 498; Roberts v. Modern Woodmen of America, 133 Mo.App. 207, 113 S.W. 726, and Tuthill v. Fidelity & Deposit Co. of Maryland, Mo. App., 119 S.W.2d 468. In each of these cases a contract was entered into in a state other than Missouri under the laws of which the contract was valid. In each case the contract contained a provision similar to the one involved in the present case limiting the time within which action could be commenced. The appellate courts in each case enforced the provision on the ground that it did not merely operate as a limitation upon the right to sue, but that it operates in the nature of a condition precedent to forfeit the liability when suit is not instituted within the stipulated time. For this reason it is said in the Dolan case, supra [123 Mo.App. 147, 100 S.W. 501], that "when the statute of limitations of the state in which the contract is made operates to extinguish the contract or debt itself, the contract or debt is then no longer enforceable elsewhere. It no longer falls within the law with respect to the limitation of remedy, but stands as a contract or debt extinguished by the law of its parent state, and, when sued upon in a foreign jurisdiction, the lex loci contractus, and not the lex fori, will control, on the principle that, there being no longer a right in the parent state, there can be none elsewhere."

Upon these principles it was held by the appellate courts that neither the statute of limitations of Missouri nor § 3351 is applicable to a contract made in a foreign jurisdiction and containing a clause valid in the state where made providing that "No action can or shall be maintained on this certificate [contract] unless brought within one year from the date" the action accrues.

■ It is settled that in cases in which jurisdiction rests upon diversity of citizenship, as it does in the present case, federal courts must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest courts of the state would decide differently. Stoner v. New York Life Ins. Co., 311 U. S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284, and cases cited.

In none of the decisions of the appellate courts of Missouri relied upon by the appellant did the court cite the Karnes case, supra, or refer to the established rule in Missouri that the courts will not enforce a foreign contract if to do so would be contrary to the public policy of Missouri. The appellate courts considered only the public policy of the lex loci.

■ Since it is for a state to say whether a contract contrary to such a statute as § 3351 of Missouri is so repugnant to its public policy as to require its courts to refuse to enforce it (Griffin v. McCoach, supra), the district court was required to appraise the Missouri law and determine whether there was convincing evidence that the Supreme Court of Missouri would not follow the decisions of the appellate courts but would decide differently (Stoner v. New York Life Ins. Co., supra). The district court in a carefully considered opinion, after reviewing the Missouri cases, concluded that the Supreme Court of Missouri would, if the question involved here were presented to it, decide according to the public policy of Missouri as declared by the legislature in the statute supra. We cannot say that the court erred in so holding. To reverse on this ground would require this court to say that the Supreme Court of Missouri did not mean what the plain import of its language in the Karnes case, supra, states with force and emphasis. That court said unequivocally that "The legislature determined that a sound public policy demands that the courts of the state shall remain open to litigants as long as their claims are not barred by the statute of limitations"; that the "legislature * * * established, as the policy of this state, a uniform regulation of the time within which suits may be brought, and declared that this should not be changed by agreement * * * and * * * it is the duty of the courts to enforce it [this rule]." There are no qualifying or limiting phrases in this pronouncement.

The language used by the Supreme Court of Missouri in the Brucker case, supra, supports the decision of the district court with equal force. It was there said that a contract which provided that "suit must be brought within one year * * * is in direct conflict with section 2166, Revised Statutes 1919 [now § 3351, Mo.R.S.A.], because it attempts to limit the period in which an action may be brought, contrary to our Statute of Limitations", and "that no contract which attempts to oust the courts of jurisdiction can be enforced"; that "a contract by the assured that any one who may acquire his rights under the contract cannot bring suit anywhere, is an attempt to oust the courts of this state of jurisdiction." Compare Union Central Life Ins. Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 617, 84 S.W. 1160, 69 L.R.A. 264, 7 Ann.Cas. 913; Reichard v. Manhattan Life Ins. Co., 31 Mo. 518; First Nat. Bank v. White, 220 Mo. 717, 120 S.W. 36, 132 Am.St.Rep. 612, 16 Ann.Cas. 889; LeGrand v. Security Benefit Ass'n, 210 Mo.App. 700, 240 S.W. 852.

It thus appears that the decisions of the appellate courts relied upon by the appellant are based upon a rule of comity, while the decisions of the Supreme Court relied upon by the district court are predicated upon a rule of public policy declared by the legislature and held to be binding upon the courts. The conclusion that the Supreme Court would apply this rule to a foreign contract is strengthened by its holding that an attempt to limit by contract the period in which an action may be brought is an invasion of the jurisdiction of the courts.

For the foregoing reasons the judgment appealed from is affirmed.

## On Petition for Rehearing.

### PER CURIAM.

The appellant in its petition for rehearing contends that in deciding that the limitation provision of the policy in suit did not bar the maintenance of this action, this court has refused to give effect to controlling decisions of the intermediate appellate courts of Missouri, which are not necessarily inconsistent with the opinions of the Supreme Court of Missouri.

It is to be noted that this action involves a policy upon the life of a citizen of Missouri, written by a company doing business

182

in Missouri, upon an application made to one of its agents in Missouri, and that the policy was to be performed in Missouri. We have gone no further than to rule that the decision of the trial court holding that under such circumstances the Supreme Court of Missouri, because of the public policy of that state with respect to the time within which actions may be brought upon policies of insurance, would not enforce the limitation provision of the policy in suit is, in our opinion, correct, and that no Missouri case compels a different conclusion. None of the cases upon which appellant relies present a similar factual situation and in our opinion they do not control the decision of this case.

The petition for rehearing is denied.