## PET MILK CO. v. BOLAND.
### No. 14,162.

United States Court of Appeals,
Eighth Circuit.

Nov. 14, 1950.

Roland F. O'Bryen, St. Louis, Mo., (O'Bryen, Schlafly & Griesedieck and Robert F. Schlafly, all of St. Louis, Mo., on the brief), for appellant.

Roberts P. Elam, St. Louis, Mo. (John S. Leahy and Joseph L. Badaracco, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS, Circuit Judge, and DEWEY, District Judge.

DEWEY, District Judge.

This is the second appeal of this case. Upon a former appeal the case was reversed and remanded, and was tried again on the same pleadings and substantially the same evidence, resulting in a second jury verdict for the plaintiff.

The opinion in the first appeal of Pet Milk Company v. John V. Boland, 8 Cir., 175 F.2d 151, sets out in detail the essential facts which need not here be repeated.

For convenience we will refer to the parties as John V. Boland, plaintiff, and the Pet Milk Company, defendant.

The controversy revolves around a writing which was signed by the plaintiff's agent on April 26, 1944, designated as "purchase order".

The defendant claims that this writing constitutes a contract, is a verity, and that parol evidence was inadmissible to vary, alter, or contradict its terms, and that any oral agreement or understanding between the parties was merged therein. The plaintiff claims that this writing was not intended or understood by the parties to be a contract, and seeks to establish by parol evidence an oral agreement between the parties, which he claims was the contract.

The trial judge in his instructions to the jury succinctly and carefully summed up the controversy; a part of which is as follows:

"The plaintiff further claims that after plaintiff had completed a substantial portion of the work aforesaid, the defendant submitted to plaintiff for execution by plaintiff a writing, designated as a purchase order, for the construction of said sewer line and said water supply line; that plaintiff on or about the 26th day of April, 1944, informed defendant that said purchase order contained provisions and conditions with respect to the method of computing excavation which were not acceptable to plaintiff, which were not applicable to the conditions under which had been done a substantial portion of the excavation work theretofore done and under which would have to be done a substantial portion of the excavation work remaining to be done, and to which the plaintiff could not and would not agree; that the defendant then and thereupon stated and represented to plaintiff that an executed purchase order was essential, under defendant's method of doing business, for payment to be made by defendant for any work done or materials furnished, and that if the purchase order prepared and submitted by defendant was executed by plaintiff, and

if the work of constructing said sewer line and said water supply line was by plaintiff completed, plaintiff would be paid by defendant for the work which plaintiff had theretofore done and would thereafter do in the said construction work, upon the basis of the work and materials furnished by plaintiff, upon the unit price basis provided in said purchase order and in accordance with plaintiff's letters to defendant under dates of March 10th and 11th and April 5th, 1944, upon plaintiff submitting periodic estimates of the work completed; and that the plaintiff relied upon such statements and representations, and, in reliance thereupon, executed said purchase order by signing the same and completed the work of constructing said sewer line and said water supply line. In other words, plaintiff claims that the purchase order which his son signed on April 26, 1944, was not agreed to as the contract between the parties for the construction work done by plaintiff for defendant upon said water supply and escape sewer lines, but that said work was done under an oral agreement and that, in the doing of such work, plaintiff rendered services, performed work, and supplied materials under such oral agreement of the value of Fifty-six Thousand Two Hundred Thirty-one Dollars and Ninety-two cents.

"The defendant, however, contends that, in so far as concerns the excavation for the sewer line in question, plaintiff is entitled to recover, and defendant is required to pay plaintiff, for such excavation computed upon the basis of a trench only thirty-three inches wide. The defendant claims that payment for such excavation upon that basis is provided for by the purchase order, and that such purchase order is binding upon plaintiff in that respect because, defendant claims, the purchase order was freely and voluntarily executed by plaintiff, without any statements or representations, such as plaintiff claims, being made by defendant. That is to say, the defendant denies that it made any statements, representations or agreements to plaintiff on April 26, 1944, as claimed by plaintiff, as an inducement to plaintiff to execute the purchase order mentioned, and de-

fendant claims that said purchase order which was signed by plaintiff's son on April 26, 1944, was then agreed to as the sole and only contract between the parties for the construction work upon said water supply and escape sewer lines.

"The defendant, however, concedes that plaintiff has not been fully paid for the services and work performed, and the materials furnished, in the aforesaid construction work done by plaintiff for defendant, and has tendered to plaintiff, on various dates since October 27, 1944, the sum of Six Thousand Nine Hundred Twenty Nine Dollars and Thirty Nine Cents, as full and final payment for the balance due plaintiff for said construction work."

■ There was evidence that would warrant a jury in finding, among other things, that the "purchase order" was not intended to be a contract, but was understood and agreed by the parties at the time it was signed, to be only a notation or memorandum; to fix a unit price so that the defendant could use it to keep track of things; and to enable the defendant to make monthly payments on estimates furnished by the plaintiff, and that the real agreement and contract for the measurements of the work and the payment to the plaintiff was to be made as agreed to orally.

The law on the questions also was set out in the former opinion.

Here the plaintiff claims; the lower court has twice held; and this court held in a former opinion, that oral evidence was admissible on the question of whether the "purchase order" was intended and understood by the parties to be the true contract between them or otherwise.

■■ In this appeal the appellant again challenges the right to introduce oral evidence under the facts of the case, but we can see no reason why the rulings and decisions in the former opinion do not constitute the "law of the case". "The phrase 'law of the case' has been employed and applied in many decisions of this and other federal courts. Stated generally, the rule is that, 'where evidence is substantially

the same on both trials, questions of law determined on * * * appeal are "law of the case," both for trial court and appellate court, on second * * * appeal.' " American Surety Co. v. Bankers', etc., Association, 8 Cir., 67 F.2d 803, 805; Pennsylvania Mining Co. v. United Mine Workers of America, et al., 8 Cir., 28 F.2d 851; Thompson v. Maxwell Land-Grant & Railway Co., 168 U.S. 451, 18 S.Ct. 121, 42 L. Ed. 539.

This disposes of the "Points to be Argued" in Points I, III, A and B, and IV, A and B, in the appellant's brief.

Point II has to do with the question of whether Missouri law controls, and Point V has been withdrawn by the defendant and the remaining questions for review are:

First, whether Mr. Shifrin, as an expert witness, should have been allowed to testify concerning the reasonable values of plaintiff's services as set out in Point VI of appellant's brief. Second, whether the court should have accepted a verdict of $18,500.00, and interest, and third, whether the instructions of the court to the jury were erroneous, misleading or contradictory.

■ We agree with the contention of the appellant that the contract was entered into in Missouri and Missouri law controls all questions as to its legality and interpretation. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed 1188; Vol. 35 C.J.S. Federal Courts, § 170, p. 1244; and Order of United Commercial Travelers of America v. Meinsen, 131 F.2d 176, 181.

But here the "law of the case" is as set out in the former opinion.

We have examined the objections raised by the defendant to the court's instructions to the jury and its several objections to the theory of the case made during the trial, also the entire proceedings bearing upon the question of whether the instructions given by the court were erroneous, misleading, or contradictory. The defendant does not point out wherein the instructions are defective. As we have above indicated the judge carefully set out the theories of the case on behalf of the plaintiff and defendant and clearly told the jury what each side claimed and gave to the jury the law bearing thereon, and we are unable to say there is anything erroneous, misleading, contradictory, or confusing in these instructions.

■■ Defendant's "Point VI to be Argued" is as follows: "The court should have allowed defendant to show by expert witness Shifrin that the amount paid for excavation of rock, when the pay line width was not used, was considerably less than $15.00 per cubic yard; in fact, less than $2.00 per cubic yard."

And the argument on Point VI in appellant's brief has the headline as follows: "The trial court erred in excluding the testimony of defendant's witness Shifrin concerning the reasonable value of plaintiff's services."

The defendant then argues that this is a quantum meruit action for services rendered. It is true that the first opinion of this court did state in one place that the action was on quantum meruit, but a careful reading of the opinion; the pleadings; the theory on which the case was tried; and the statement in the court's instructions to the jury, that the suit was on an oral contract, clearly shows that the recovery was sought on an oral contract between the parties, in which a part of the "purchase order" was included.

Had the case been tried as an action in quantum meruit there would be much force to the contention of the defendant that the evidence of Mr. Shifrin in this particular, offered by the defendant, should have been received.

The "purchase order" signed by the plaintiff on April 26, 1944, provided as follows: "The cubic yards of excavation for the 15″ tile sewer line is to be figured on the basis of a trench being 33″ wide multiplied by the average depth and by the length of the trench through the cut."

This method of computing the amount of work done was one of the main controversies between the parties.

Mr. Shifrin was asked concerning the meaning and use of a "pay line width

302

clause", (such as the one above), in construction contracts, and the defendant cites as error the refusal of the court to admit this testimony.

As the court told the jury what each side claimed was due the plaintiff under his or its contention of what actually was the contract, (Thirty Thousand Twenty-Three Dollars and Seventy-Eight Cents, with interest, if for the plaintiff, and Six Thousand Nine Hundred Twenty-Nine Dollars and Thirty-Nine Cents, if for the defendant), we cannot see how the exclusion of the proffered evidence would affect the result of the trial or the amount of the verdict.

The wordings of the clause in the contract is very clear and unambiguous and does not need explanation.

Also, since this claim was not set out as a point to be argued in appellant's brief it is abandoned, and cannot be here raised. Rule 11(b), Fourth, of this Court; Cohen v. United States, 8 Cir., 142 F.2d 861, 863 (1); Mathewson v. First Trust Company of St. Joseph, 8 Cir., 100 F.2d 121, 122, 123(1); and Pennsylvania R. Co. v. Public Utilities Commission of Ohio, 298 U.S. 170, 177, 56 S.Ct. 687, 80 L.Ed. 1130.

■ The last point argued is whether the judge should have accepted a verdict returned by the jury for an amount different than the amounts fixed by the judge to be returned should the jury find for the plaintiff, or the defendant.

It appears that during the trial the jury returned a verdict for $18,500.00, and interest. The judge ordered the verdict lodged with the clerk and marked "refused", and announced to the jury that this verdict could not be accepted. The attorneys then agreed that the court might reread all of the instructions with reference to the amount the jury might return, and the jury then retired, without objection on the part of the defendant to the refusal of the court to accept the verdict tendered.

The failure of the defendant to raise any objections at that time to this procedure was a waiver of its right to raise the question here. F. W. Woolworth Co.

v. Carriker, 8 Cir., 107 F.2d 689, 692 (2); Kurn v. Stanfield, 8 Cir., 111 F.2d 469, 474(11); Guardian Life Ins. Co. v. Kissner, 8 Cir., 111 F.2d 532, 534; Rittgers v. United States, 8 Cir., 154 F.2d 768, 772(5).

It is apparent that there could be only one verdict in one of two sums as set out in the court's instructions under the theory upon which the case was tried.

With no objection to the procedure it would be very unfair to permit the defendant to object now as the final verdict might have been in its favor.

■ The plaintiff has filed a motion asking this court to assess damages for vexatious delay caused by this appeal. The amount involved is substantial, and the issues raise certain close questions of law and fact, as indicated by a very able dissenting opinion in the first appeal. Consideration of the entire appeal proceedings has convinced us that the appeal is not vexatious within the meaning of Rule 21 (b) of this court or Section 1230, Revised Statutes of Missouri 1939, Mo.R.S.A. and plaintiff's motion is therefore denied.

Affirmed.